UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KAREN A. MURPHY and : | |
| KATHLEEN A. MURPHY, : | CIVIL ACTION NO. |
|     Plaintiffs, : | 3:13-CV-00942 (JCH) |
| : | |
| v. : | |
| : | OCTOBER 25, 2013 |
| CITY OF STAMFORD ET AL., : | |
|     Defendants. : | |

**RULING RE: DEFENDANTS' MOTION TO DISMISS (Doc. No. 33)**

**I.     INTRODUCTION**

On August 12, 2013, defendants City of Stamford, City of Stamford Board of Assessment Appeals, Frank Kirwin, Bill Jessa, Anne S. Peskin, Shawn C. Costello, George Sessa, Raymond Leyden, Starr Merritt, and Joseph J. Capalbo moved to dismiss eight of the ten counts in the Complaint filed by plaintiffs Karen and Kathleen Murphy ("the Murphys") against them.  Defendants' Motion to Dismiss the Plaintiffs' Complaint ("Def.'s Mot. to Dismiss") (Doc. No. 33) at 1.  Defendants specifically move to dismiss Count One, Count Two, Count Four, and Counts Six through Ten for failure to state claims upon which relief may be granted and lack of subject matter jurisdiction.  Id. Defendants also seek to dismiss the Motion on the grounds that:  the Board of Assessment Appeals, members of the Board, and Stamford officials are entitled to absolute and qualified immunity; the Complaint fails to allege that Frank Kirwn was personally involved in the alleged deprivation of plaintiffs' constitutional rights; and the plaintiffs' state law claims fails as a matter of law because they have adequate remedies at state law.  Id. at 2.  Defendants request that, should the court dismiss these counts, it

1

remand Count Three and Count Five—appeals pursuant to Connecticut General Statutes, sections 12-117a and 12-119—to Stamford Superior Court. Id. at 2 n.1.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual History

The Murphys jointly own a property—consisting of the land and all buildings and improvements thereon—located at 68 Saddle Rock Road in Stamford, Connecticut. Notice of Removal ("Not. of Rem.") (Doc. 1) at Exh. 3, ¶ 1. According to the Murphys, the Stamford Tax Assessor, defendant Frank Kirwin ("Kirwin"), improperly assessed the value of their property when the property was revalued on October 1, 2012. Id. at ¶ 7. The Murphys assert that Kirwin's assessment contained multiple errors, resulting in the overvaluation of the property. Id.

On March 20, 2013, the Murphys appealed to the Stamford Board of Assessment Appeals ("Board"), claiming that they had been aggrieved by Kirwin's assessments and offering to testify to any questions concerning the property. Id. at ¶ 8. On April 4, 2013, the Board held an appeal hearing, which Karen Murphy attended; the hearing was conducted by Board member Shawn Costello ("Costello"). Id. at ¶ 12. The Murphys allege that, on at least two or three occasions during the hearing, Costello left the room and conducted ex parte communications with Deputy Tax Assessor Bashir Jessa ("Jessa") and/or others. Id. at ¶ 16. During the hearing, Costello requested certain additional information from the Murphys, which they provided on April 9, 2013. Id. at ¶ 17.

On April 9, 2013, the Board held a deliberation meeting, which Karen Murphy attended. Id. at ¶ 20. Four Board members, including Costello, and Jessa were present at the meeting. Id. at ¶ 21. The Murphys maintain that Jessa attended the

meeting to represent Kirwin and assist the Board. Id. at ¶ 22. During the meeting, Costello left the room with Jessa to discuss the additional information the Murphys submitted on April 9; upon returning with the additional evidence in hand, Costello looked at Karen Murphy and "said something to the effect [of] 'you did me in this time.'" Id. at ¶ 27. The Murphys assert that Costello and the Board had no opportunity to review the new evidence submitted on April 9, or question Karen Murphy or Jessa. Id. at ¶ 28. They also claim that Costello ignored the Murphys' evidence and failed to present most of the Murphys' challenges to Kirwin's methodology and judgments. Id. at ¶ 29.

Costello made two recommendations to the Board at the meeting. Id. at ¶ 30. The Murphys allege that both recommendations were based on Costello's ex parte discussion with Jessa prior to the meeting and that Costello provided no rational basis for the recommendations. Id. The Board approved the recommendations, the Murphys note, without discussing them or reviewing the Murphys' submitted evidence. Id. The Murphys apparently also submitted Field Cards for the Board's consideration, Cards that allegedly "showed conclusively, among other things, that [the Murphys'] land, home and pool [were] over[-]assessed." Id. at 32. Costello, the Murphys contend, did not show or discuss these Cards with the Board. Id. The Murphys observe that, following the deliberation meeting on their property, Costello showed and discussed Field Cards for other cases before the Board. Id. at ¶ 32.

Following the April 9 deliberation meeting, Karen Murphy found out that Costello's father-in-law was Dan McCabe ("McCabe"), an attorney of whom the Murphys had been "highly critical." Id. at ¶ 35, 39. The Murphys have been critical of

3

the Mayor of Stamford and two other attorneys, who the Murphys claim are "close political friends" of McCabe, as well. Id. at ¶ 39. The Murphys assert that Costello did not disclose his relationship with McCabe, despite having the opportunity to do so during a conversation prior to the April 4 hearing. Id. at ¶ 37. Additionally, the Murphys claim that "the Administration," presumably that of the Mayor of Stamford, "retaliates against employees, elected and appointed officials and others who challenge its authority, decisions, or judgments." Id. at ¶ 40.

On April 15, the Murphys filed a request for a new hearing with the Chair of the Board, Anne Peskin ("Peskin"), based on Costello's alleged conflict and constitutional violations that the Murphys believe the Board committed during its deliberation meeting on the Murphys' appeal. Id. at ¶¶ 41-42. The Murphys' request was denied in a letter dated May 6, 2013, and signed by Stamford's Corporation Counsel, Joseph Capalbo ("Capalbo"), which stated that the Board did not conduct additional hearings after rendering its decision, and that the Murphys' exclusive remedy was an appeal of the Board's decision to the Superior Court of Connecticut. Id. at ¶ 46. The Murphys insist that their request for a new hearing was filed before the Board met on April 15 to decide Murphys' appeal. Id. at ¶ 45. The Murphys' responded to Capalbo's letter, challenging its claim that their request for a new hearing was filed after the Board issued its decision. Id. at ¶ 50. They did not receive a response. Id.

The Board issued a change to the October 2012 Assessment in a letter ("Notice of Action") dated April 22, 2013, revising the value of the property from $2,509,880 to $2,460,180. Id. at ¶ 43. The Murphys contend that the revised value still exceeds the true value of the property. Id. at ¶ 52. In addition, the Murphys claim that the Notice of

Action provides no factual or legal basis, explanation or justification for the revised assessment, fails to address the Murphys' reasons for appealing the original assessment, and is "replete with errors." Id. at ¶ 53-54.

Count One of the Murphys' Complaint seeks declaratory judgment of whether Connecticut General Statute, section 12-111, which provides for appeals of assessment determinations to the Board, allows the Board to delegate its authority to review appeals to only one member of the Board or an outsider. Id. at ¶¶ 67-71. If the court finds that section 12-111 does allow for such delegation, Count One seeks judgment on whether the failure to train the Board or the reviewing outsider in assessment matters or to disclose the procedures for how assessment appeals are assigned, amounts to deliberate indifference to the state and federal due process and equal protection rights of property owners. Id. at ¶ 72.

Count Two asserts that, through their conduct of the assessment appeal hearing, the Board, Kirwin, Jessa, and Capalbo wantonly, recklessly, and maliciously inflicted damages on the Murphys. Id. at ¶¶ 76-86.

Count Three appeals, pursuant to Connecticut General Statute, section 12-117a, the Board's reassessment of the Murphys' property as well as, it appears, Kirwin's original assessment. Id. at ¶ 87-89.

Count Four appears to request a correction of errors found in the 2009, 2010, 2011, 2012 assessments and the October 2012 revised assessment of the Murphys' property, pursuant to Connecticut General Statute, section 12-60. Id. at ¶¶ 90-94.

Count Five applies for relief, pursuant to Connecticut General Statute, section 12-119, from the tax on the Murphys' property that is based on the October 2012 revised assessment. Id. at ¶¶ 97-96.

Counts Six through Eight allege that the appeal hearing and subsequent issuance of the Notice of Action on the Murphys' property deprived the Murphys of equal protection of the laws as well as of substantive and procedural due process, violating the Fourteenth Amendment of the United States Constitution; on this basis, the Murphys seek relief pursuant to title 42, United States Code, section 1983. Id. at ¶¶ 97-117.

Counts Nine and Ten allege that the defendants' allegedly unlawful acts constituted a civil conspiracy, and they request common law relief and relief pursuant to title 42, United States Code, section 1985(3). Id. at ¶¶ 118-22.

As relief, the Murphys seek a declaratory judgment, a reduction in their tax liability for their property and the assessment on which the liability is based, a reduction in the valuation of the property, correction of errors, refund of their overpayment of taxes, interest, attorneys' fees, and compensatory and punitive damages. Id. at 26.

B.  Procedural History

The Murphys filed their Complaint against Stamford in the Superior Court of the State of Connecticut, Judicial District of Stamford/Norwalk at Stamford. Not. of Rem. at Exh. 3. Stamford then removed the case to federal court.[1] Id. at ¶ 6. The Murphys filed a Motion to Remand that was denied by this court on September 27, 2013. Plaintiffs'

---

[1] Why the defendants chose to remove this case, which the Murphys appropriately brought in state court, only to immediately move to dismiss it from federal court on subject-matter jurisdiction grounds, is an interesting question.

Objections to Notice of Removal ("Pl.'s Obj. to Not. of Rem.") (Doc. No. 28); Ruling Re: Plaintiff's Motion to Remand ("Ruling Re: Pl.'s Mot. to Rem.") (Doc. No. 44).

### III. STANDARD OF REVIEW

On a motion to dismiss, all factual allegations in the complaint must be accepted as true, and the court must draw all reasonable inferences in the plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). "[A] motion to dismiss does not involve consideration of whether a plaintiff will ultimately prevail on the merits, but instead solely whether the claimant is entitled to offer evidence in support of his claims." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 65 (2d Cir.2010) (citation and quotation marks omitted).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to challenge a plaintiff's failure to improperly invoke the federal court's subject matter jurisdiction. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The district court may resolve the disputes' jurisdictional fact issues by reference to evidence outside the pleadings. Exchange National Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976). Where jurisdiction is lacking, the district court must dismiss the complaint without regard to the merits of the lawsuit. Nowak v. Ironworkers Local 6 Pension Fund, 81 F. 3d 1182, 1138 (2d Cir. 1996).

Pursuant to the Federal Rules, a defendant may also move to dismiss a complaint if it "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Trans.

7

Local 504, 992 F.2d 12, 14 (2d Cir. 1993).  To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949 (2009) (quoting *Twombly,* 550 U.S. at 556).

However, pro se complaints "must be construed liberally and interpreted to raise the strongest arguments that they *suggest.*"  Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original, quotation omitted).  "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quotation and citation omitted).  The Second Circuit has observed that "even after Twombly, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."  Boykin v. KeyCorp, 521 F.3d 202, 216 (2d Cir. 2008).  Where a pro se complaint must be dismissed due to a pleading deficiency, the court should generally provide leave to amend.  Watts v. Services for the Underserved, 309 F. App'x 533, 535 (2d Cir. 2009) ("[W]here the ground for dismissal is quite narrow and the plaintiff appears *pro se,* it was error to enter judgment . . . rather than permitting plaintiff at least one chance to cure a pleading defect."); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir.1999) ("Certainly the court should not dismiss without

8

granting leave to amend at least once when a liberal reading of the [pro se ] complaint gives any indication that a valid claim might be stated.").

## IV. DISCUSSION

### A. Motion to Dismiss

The defendants have moved to dismiss Counts One, Two, Four, and Six through Ten of the Murphys' Complaint on a number of grounds. As a threshold matter, defendants argue that the Tax Injunction Act strips this court of the jurisdiction to consider Murphys' section 1983 claims. Def.'s Mot. to Dismiss Pl.'s Comp. at 2. Thus, the court must consider whether the TIA applies here before it reaches the defendants' other arguments for dismissal.

#### 1. Claims

##### a. Section 1983 Claims

The Tax Injunction Act ("TIA"), and the principle of comity that underlies it, deprive this court of jurisdiction to consider the Murphys' section 1983 claims.[2] The

---

[2] The Murphys assert two novel, and erroneous, propositions against the applicability of the TIA here: first, they propose that this court's ruling on their Motion to Remand is dispositive of whether the TIA applies; second, they argue that the defendants' removal of their Complaint to federal court was a waiver of comity. The former proposition is incorrect because the court's Ruling on their Motion to Remand purposefully did not reach whether the TIA applied here because the defendants had not briefed the matter. See Ruling Re: Pl.'s Mot. to Rem. at 4-5. The latter is unsupported by the one case the Murphys cite—Levin v. Commerce Energy, Inc., 130 S.Ct. 2323, 2336 (2010)—and contradicted by others. See 130 S.Ct. at 2336 (quoting Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 480 (1977), where the court noted that, because the state had requested that the federal court resolve a constitutional issue, "principles of comity [did] not demand that the federal court force the case back into the State's own system"); S/N1 Reo Ltd. Liability Co. v. City of New London ex rel. Ballestrini, 127 F.Supp.2d 287, 295 (D. Conn 2000) (noting that the TIA jurisdictional bar could not be waived because subject-matter jurisdiction is non-waivable); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999) (observing that subject-matter jurisdiction "is nonwaivable and delimits federal-court power").

9

TIA's limitation on constitutional challenges to state tax systems is clearly established.

The TIA, Title 28, United States Code, section 1341, states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

The TIA "is rooted in principles of federalism and in recognition of a state's need to administer its own fiscal operations, and was written primarily to limit federal-court interference with local tax matters." Bernard v. Village of Spring Valley, 30 F.3d 294, 297 (2d Cir.1994). The Supreme Court has established that the TIA prohibits district courts from issuing declaratory judgments holding state tax laws unconstitutional. California v. Grace Brethren Church, 457 U.S. 393, 408 (1982). The Court has further held that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts." Fair Assessment in re Al Estate Ass'n v. McNary, 454 U.S. 100, 116 (1981); see also Nat'l Private Truck Council v. Okla. Tax Comm'n, 515 U.S. 582, 587 (1995) ("Congress never authorized federal courts to entertain damages actions under § 1983 against state taxes when state law furnishes an adequate legal remedy."). Thus, if the Murphys' constitutional claims are properly considered challenges to the assessment, levy, or collection of a state tax and if a plain, speedy, and efficient remedy is available to the Murphys under state law, this court lacks jurisdiction to consider their section 1983 claims and request for declaratory relief. See Marshall v. Town of Middlefield, No. 3:07cv1079, 2008 WL 5157753 at *2 (D. Conn. Dec. 5, 2008); see also Bernard, 30 F.3d 294 at 297 ("[F]ederal courts are precluded from exercising jurisdiction over challenges to state tax assessments, regardless of the type of relief sought.").

10

The Murphys argue that, because they are asking the court to determine whether the Boards' assessment appeal hearings are unconstitutional, they are not seeking to "enjoin, suspend, or restrain" the collection of taxes. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Pl.'s Mem. in Opp.") (Doc. No. 41) at 7. This argument is unavailing, however, for "basing a complaint upon alleged violations of civil rights . . . 42 U.S.C. § 1983 or the Federal Constitution will not avoid the prohibition contained in Section 1341." Hickmann v. Wujick, 488 F.2d 875, 876 (1973). In finding that the TIA proscribes declaratory relief, the Supreme Court has observed that a federal court's determination of unconstitutionality could disrupt the collection of taxes just as fully as an injunction would. See California, 457 U.S. at 408; Fair Assessment, 454 U.S. at 115-16. Thus, the constitutional nature of the Murphys' claims does not insulate them from the reach of the TIA.

The Murphys' characterization of their section 1983 claims as a challenge to the Board's appeals procedures is also not enough to immunize them against the TIA. The Third Circuit in Gass v. County of Allegheny, PA, 371 F.3d 134 (3d Cir. 2004), found a similar argument—i.e., that a challenge to the post-collection appeals process did not implicate the state's ability to assess, levy, or collection taxes—unpersuasive.[3] The

---

[3] In the Murphys' objection to the defendants' Notice of Removal, where they discuss the applicability of the TIA to their case in some detail, they cite William Jefferson & Co., Inc. v. Bd. of Assessments & Appeals No. 3 ex rel. Orange County, 695 F.3d 960 (9th Cir. 2012) as an instance of a federal court considering a challenge to a tax assessment appeal board's hearing procedures. Pl.'s Obj. to Not. of Rem. at 6. Their reliance on William Jefferson, however, is misguided, as neither the Ninth Circuit decision nor the lower court decision it reviews addresses the TIA at all. 695 F. 3d 960; William Jefferson & Co., Inc. v. Bd. of Assessments & Appeals No. 3 ex rel. Orange County, No. SACV09-849 DOC, 2011 WL 245592 (C.D. Cal. Jan. 24, 2011).

11

Gass court noted that "[t]he appeal process is directed to the Board's ultimate goal and responsibility of determining the proper amount of tax to assess—a power of 'assessment' that explicitly falls within the ambit" of the TIA. 371 F.3d at 136-37. Further, the "prior payment of the tax" did not "change the fact that [the appellants sought] to enjoin Pennsylvania's finalization of assessments or re-assessments of taxes." Id. at 137.

Whether the Murphys' section 1983 claims trigger the TIA turns on the effect their sought relief would have on Stamford's assessment of taxes against them. Congress' intent in enacting the TIA was "the prevention of a particular evil; namely, using federal courts as a vehicle to bring suits challenging the validity or amount of a particular tax assessed against an individual person or entity." Luessenhop v. Clinton County, New York, 466 F.3d 259, 266 (2d Cir. 2006). The TIA is implicated, then, when taxpayers seek to utilize federal courts "as a conduit to empty state coffers." Id. Were the Murphys to prevail on their constitutional challenges, they would accomplish just that. In addition to a declaration that the Board's appeals procedures are unconstitutional, the Murphys request a reduction in the assessment of their property and their resultant tax liability for the property, a refund of their alleged overpayment of taxes, and compensatory and punitive damages. Not. of Rem. at Exh. 3, at 26. Such relief, if granted, would certainly diminish and disrupt state tax collection. Further, as the relief sought reveals, the crux of the Murphys' claims against defendants is that the taxes levied on their property are invalid. When the "belief that the taxes . . . owed were fraudulent" underlies a party's constitutional claims, the TIA applies. Marshall, 2011 WL 2982315, at *3.

It is worth briefly noting how dissimilar the Murphys' claims are from constitutional challenges of tax systems to which courts have held the TIA does not apply. In Luessenhop, the Second Circuit noted that the TIA was not applicable where taxpayers argued that the foreclosure notices provided by the taxing authority were constitutionally inadequate because "the taxpayers [were] not attempting to avoid paying state taxes. . . . [or] disput[ing] the assessments or amounts owed." 466 F.3d at 261, 268. In Hibbs v. Winn, 542 U.S. 88 (2004), the Court upheld a challenge to a state tax credit policy because it was brought by third-parties who were seeking to enjoin tax benefits, not taxpayers contesting their tax liability. 542 U.S. at 94, 107-08. The Murphys' case has been brought by taxpayers contesting their tax liability by disputing the validity of the assessments owed—that is, it is precisely the type of case the Second Circuit and Supreme Court have distinguished from cases found to be beyond the scope of the TIA.

For the TIA to fully strip this court of jurisdiction to consider the Murphys' constitutional claims, however, the Murphys must have a plain, speedy, and efficient remedy in state court. 28 U.S.C. § 1341. The Murphys argue that the remedy available to them under Connecticut General Statutes, sections 12-117a and 12-119—which allow a person claiming to be aggrieved by an action of the Board or by wrongful assessment of his or her property to apply to the Superior Court for relief—is not plain, speedy, or efficient. Pl.'s Obj. to Not. of Rem. at 7-9. The Murphys contend that the available remedy is deficient because it is limited to a refund against the City and does not allow redress for the alleged constitutional violations of the Board and other defendants. Id. at 9-10. The Murphys also suggest that the remedy is not efficient,

citing the defendants' removal of the case to this court, their Motion to Dismiss, and other actions in this litigation as the source of that inefficiency, and that the remedy is not plain because it is unclear whether state law allows the state court to hear and decide the Murphys' federal claims. Id. at 10-11.

To satisfy the "plain, speedy, and efficient" requirement, the remedy need not be perfect but must satisfy "certain minimal procedural criteria" by providing a "full hearing and judicial determination at which [the taxpayer] may raise any and all constitutional objections to the tax." Rosewell v. LaSalle Nat'l Bank, 450 U.S. 503, 512, 514 (1981) (citation and quotation marks omitted). The Second Circuit has previously held that the remedies provided by sections 12-117a and 12-119, as well as Connecticut General Statutes, section 12-129, which allow a taxpayer to "pay a tax under protest and raise constitutional challenges in an action to obtain a refund," are "plain, speedy, and efficient" for the purposes of the TIA. See Marshall v. Town of Middlefield, 360 Fed. Appx. 227, 228-29 (2d Cir. 2010); Marshall, 3:10-cv-1327 CFD, 2011 WL 2982315 at *4.[4] Thus, Count One and Counts Six through Eight of the Murphys' Complaint—claims for declaratory judgment and relief under section 1983—fall within the purview of the TIA and are dismissed for lack of subject-matter jurisdiction.[5]

---

[4] The Murphys appear to doubt the sufficiency of sections 12-117a and 12-119 as remedies by noting that they "can in no way be the 'main event' in [the Murphys'] attempt to have their constitutional violations and the abuse of lawful authority redressed." Pl.'s Mem. in Opp. at 9. However, they cite nothing in support of this contention. This contention is furthermore inconsistent with the Supreme Court's holding in National Private Truck Council that state courts "must refrain from granting federal relief under section 1983 when there is an adequate legal remedy" at law. 515 U.S. at 592. As the Murphys have an opportunity to raise their constitutional challenges under Connecticut General Statutes, section 12-129, they have an "adequate legal remedy" at law.

[5] Because the Murphys' claims for declaratory judgment and relief under section 1983 are barred from judicial consideration by the TIA, the court need not address defendants'

b.  Section 1985(3) Claim

Defendants also assert that Count Ten must be dismissed because the Complaint fails to state a claim under section 1985(3). Def.'s Mot. to Dismiss Pl.'s Comp. at 2. To state a cause of action under title 42, United States Code, section 1985(3), a plaintiff must allege:

> (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States.

Thomas v. Roach, 165 F. 3d 137, 146 (1999). The plaintiff must also allege that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." Id. at 146 (citation and quotations omitted). A conspiracy "need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." Id. (citation and quotations omitted). Further, the plaintiff must allege "with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." Id. at 147. A "complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." Gyadu v. Hartford Ins. Co, 197 F.3d 590, 591 (1999) (citation and quotations omitted).

Count Ten alleges that the Board's conduct at the Murphys' appeal hearing was the result of a conspiracy to deprive them of equal protection of the laws. Not. of Rem, at Exh. 3, ¶ 122; Pl.'s Mem. in Opp. at 27. The Murphys appear to argue that the

---

arguments that these claims be dismissed because the defendants are entitled to absolute and qualified immunity and because Kirwin is not alleged to have participated in the constitutional violations. Def.'s Mot. to Dismiss at 2.

15

conspiracy was motivated by Costello's political animus towards the Murphys due to their public criticism of his father-in-law. Pl.'s Mem. in Opp. at 26-28.

While the Murphys correctly observe that section 1985(3) prohibits political discrimination, their Complaint fails to allege with sufficient particularity the existence of such a politically motivated conspiracy among the Board members. Id. at 27; see Keating v. Carey, 706 F.2d 377, 387-88 (recognizing that section 1985(3) covers discrimination on the basis of political affiliation and belief). Though the Complaint alleges that Costello, who was one of the members of the Board that reviewed the Murphys' appeal, was the son-in-law of someone the Murphys had publicly criticized, it does not allege that the rest of the Board had similar ties. Nor does the Complaint allege that Costello acted out of political animus in deciding the Murphys' appeal. The Complaint's only allegation regarding Costello's relation to McCabe is that Costello "intentionally and wrongfully" failed to disclose it. Not. of Rem, at Exh. 3, ¶ 38. To allege a section 1985(3) conspiracy, "[a] complaint in a case like this must set forth facts showing some intentional and purposeful deprivation of constitutional rights." Powell v. Workmen's Compensation Bd. of State of N.Y., 327 F. 2d 131, 137 (1964). The absence of any allegation in the Complaint of even a "tacit understanding" between Costello and the rest of the Board to deprive the Murphys of their rights for political purposes is fatal to the Murphys' section 1985(3) claim. Count Ten is thus dismissed for failure to state a claim, with leave to replead, if the Murphys have a factual basis to set forth more detailed allegations supporting a claim under section 1985(3). See Marshall v. Webster Bank, N.A., 3:10-cv-908 (JCH), 2011 WL 219693 at * 10 (D. Conn.

Jan. 21, 2011) (dismissing a pro se plaintiff's civil conspiracy claim, with leave to replead); Watts, 309 F. App'x at 535.

### c.  State law claims

As this court has dismissed the federal claims raised by the Murphys' Complaint, the court declines to retain supplemental jurisdiction over the Murphys' state law claims unless the Murphys can plead a cause of action under section 1985(3), see supra at 16-17.  See 28 U.S.C. § 1367(c)(3); United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided . . . . if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). If the Murphys are unable to plead a federal cause of action, Counts Two, Four, and Nine will be remanded to the Stamford Superior Court along with Counts Three and Five.

### V.  CONCLUSION

For the aforementioned reasons, the defendants' Motion to Dismiss is **GRANTED**.  Counts One, Two, Four, and Six through Nine of the Murphys' Complaint are dismissed.  The Murphys are granted leave to file an amended complaint to cure the defect in Count Ten by November 15, 2013.  If the Murphys are able to plead facts sufficient to allege a section 1985(3) claim in their amended complaint, defendants may file another Motion to Dismiss on Count Ten and reclaim their Motion to Dismiss on Counts Two, Four, and Nine; if the Murphys are unable to do so, Count Ten will be dismissed.

The Clerk of Court is directed to hold the case on the docket. If no amended complaint is filed on or before November 15, 2013, the Clerk is directed to remand the

case (Counts Two, Three, Four, Five, and Nine) to the Stamford Superior Court for adjudication.

**SO ORDERED.**

    Dated at New Haven, Connecticut this 25th day of October, 2013.

                                       /s/ Janet C. Hall
                                       Janet C. Hall
                                       United States District Judge